1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8

9  FELIX ESTRADA,                                    CV F   06-00908 AWI DLB HC

10              Petitioner,                          FINDINGS AND RECOMMENDATION
                                                     REGARDING PETITION FOR WRIT OF
11        v.                                         HABEAS CORPUS

12                                                   [Doc. 1]
    KATHLEEN PROSPER,
13
                Respondent.
14  _____/

15

16        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

17  pursuant to 28 U.S.C. § 2254.

18                                   BACKGROUND

19        Following jury trial in the Stanislaus County Superior Court, Petitioner was convicted of

20  first degree burglary.  He was sentenced to 25 years to life plus 10 years for two prior serious

    felony enhancements.
21
          Petitioner filed a timely notice of appeal.  On May 28, 2003, the California Court of
22
    Appeal, affirmed the judgment, but remanded for re-sentencing on the enhancements.  (Lodged
23
    Doc. No. 1.)
24
          On June 24, 2003, Petitioner filed a petition for review in the California Supreme Court.
25
    (Lodged Doc. No. 6.)  The petition was denied on August 13, 2003.  (Lodged Doc. No. 7.)
26
          After re-sentencing, Petitioner filed another appeal.  On October 4, 2004, the California
27
    Court of Appeal affirmed the judgment, but modified the amount of Petitioner's fines.  (Lodged
28

1   Doc. No. 2.)

2          On November 4, 2004, Petitioner filed a petition for review in the California Supreme

3   Court.  (Lodged Doc. No. 10.)  On December 15, 2004, the California Supreme Court denied the

4   petition.  (Lodged Doc. No. 11.)

5           On March 3, 2004, Petitioner filed a petition for writ of habeas corpus in the Stanislaus

6   County Superior Court.  (Lodged Doc. No. 12.)  The petition was denied on March 23, 2004.

7   (Lodged Doc. No. 13.)

8          On August 9, 2004, Petitioner filed a second petition for writ of habeas corpus in the

9   Stanislaus County Superior Court.  (Lodged Doc. No. 14.)  The petition was denied on

10  September 1, 2004.  (Lodged Doc. No. 15.)

11         On March 2, 2004, Petitioner filed a petition for writ of mandate in the California Court

12  of Appeal, Fifth Appellate District.  (Lodged Doc. No. 16.)  The petition was denied on March

13  25, 2004.  (Lodged Doc. No. 17.)

14         On February 24, 2005, Petitioner filed a second petition for writ of habeas corpus in the

15  California Court of Appeal, Fifth Appellate District.  (Lodged Doc. No. 18.)  The petition was

16  denied on March 4, 2005.  (Lodged Doc. No. 19.)

17         On July 20, 2005, Petitioner filed a petition for writ of habeas corpus in the California

18  Supreme Court.  (Lodged Doc. No. 20.)  The petition was denied on May 17, 2006.  (Lodged

19  Doc. No. 21.)

20         Petitioner filed the instant federal petition for writ of habeas corpus on June 26, 2006, in

21  the United States District Court for the Eastern District of California, Sacramento Division.

22  (Court Doc. 1.)  Respondent filed an answer to the petition on December 27, 2006, and Petitioner

23  filed a traverse on February 23, 2007.  (Court Docs. 15, 20.)

24                              STATEMENT OF FACTS

25         On March 11, 2001, at approximately 12:00 p.m., Joshua and Ross Ballard, along with

26  their friend Kirk Tobler took several children to the park.  Joshua left the side door of the garage

27  that connected to the house open, and the wooden gate which leads to that side door was not

28

locked. (RT 33-34, 40.)  The trash cans were sitting between the gate and the street.[1]  (RT

34.)  Prior to leaving the house that day, Joshua noticed that his drill was in the garage.  (RT 35.)

He estimated that the value of the drill was $250.

Approximately four hours later, as they were driving home from the park, Joshua and

Ross saw a large Hispanic male about two blocks from their home riding a small pink bicycle

and carrying what appeared to be their drill.  (RT 36, 56-57, 59.)  When they got home, they

discovered that the drill was missing from the garage.  (RT 35, 37.)  They all got back into their

cars and drove around looking for Petitioner.  (RT 37, 49, 61.)

They observed Petitioner sitting in the park with the drill case and a case of sockets right

next to him.  (RT 37, 41, 43, 49, 57, 62.)  The socket set belonged to Joshua's father and had also

been taken from the garage.  (RT 41-42.)  Petitioner started to run when he saw the individuals

getting out of their cars; the three men chased after Petitioner and tackled him to the ground.  (RT

38, 48, 63.)  During the struggle, Petitioner tried to stab Tobler with a screwdriver that had been

taken out of the Ballard's garage and subsequently bit Tobler on the arm.  (RT 38, 43-44, 47, 58.)

The police were contacted, and Officer David Watson, responded as he was already at the park

when the incident occurred.  (RT 47, 68.)  Deputy Watson observed Petitioner on the ground

with three men on top of him.  (RT 69.)

Defense

Petitioner testified in his own defense.  Petitioner stated that he was home on March 11,

2001, when a homeless man named "Brandy," came by and told him that he had seen some items

thrown into a garage, and where he could locate the items.  (RT 74-75, 79-80.)  As Petitioner and

his wife had salvaged items in the past, he decided to go look for the items.  (RT 74-76, 80-81.)

Petitioner rode his daughters bicycle to the location and found two boxes in a "green" trash can

outside the gate of the Ballard residence.  (RT 76-77, 88; see RT 132-134.)  He took the items,

without looking to see what was inside, and rode the bicycle to the park to watch a soccer game.

(RT 77, 89-90, 95.)  Petitioner also stated that he did not look inside the boxes while at the park

---

[1]  Joshua Ballard testified that there is a "green" garbage can that sits just outside the gate, but that the can
was empty.  (RT 132-134.)

because he was watching the soccer game and therefore did not know that he had a drill. (RT 90.)
Petitioner stated that he found the screwdriver in the street.  (RT 91.)  Petitioner stated that after
the soccer game was over and as he got onto his bicycle to ride home, he was attacked by three
men.  (RT 77, 86, 90.)  Petitioner bit one of the men's arms because he was having difficulty
breathing.  (RT 79.)  Petitioner stated the men twisted his arm, choked him, and threatened to kill
him.  (RT 85.)

Petitioner's wife, Annette Meras, testified that she had known Petitioner for 20 years, had
two children with him and the two were living together on March 11, 2001.  (RT 99-100, 103.)
She stated that the two would often find abandoned items and salvage them to sell at yard sales.
(RT 100-101, 104.)  She saw Petitioner talking to Brandy at their home on March 11, 2001.  (RT
107-110.)  Petitioner was not able to give the last name or address for Brandy.  (RT 92.)

Rebuttal

Deputy Watson testified that Petitioner told him that Brandy told Petitioner there were
some tools sitting in front of a house near the garbage cans.  (RT 116-117, 120, 122.)  Petitioner
told Deputy Watson that he felt guilty for taking the tools because he was not a thief and he
intended to return the items.  (RT 118, 122.)  Petitioner told the Deputy that he had never stolen
before in his life.[2]  (RT 118.)

DISCUSSION

A.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody
pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws
or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,
529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered
violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises
out of the Stanislaus County Superior Court, which is located within the jurisdiction of this
Court.  28 U.S.C. § 2254(a); 2241(d).

---

[2] On cross-examination, Petitioner admitted that he was convicted of robbery in 1990, and for a felony in
1986 and a felony in 1983.  (RT 87-88.)

1    On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

2  of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

3  enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114

4  F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting

5  Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct.

6  1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059

7  (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant

8  petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

9  B.    Standard of Review

10    This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

11  custody pursuant to the judgment of a State court only on the ground that he is in custody in

12  violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

13    The AEDPA altered the standard of review that a federal habeas court must apply with

14  respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v.

15  Taylor, 120 S.Ct. 1495, 1518-23 (2000). Under the AEDPA, an application for habeas corpus

16  will not be granted unless the adjudication of the claim "resulted in a decision that was contrary

17  to, or involved an unreasonable application of, clearly established Federal law, as determined by

18  the Supreme Court of the United States;" or "resulted in a decision that was based on an

19  unreasonable determination of the facts in light of the evidence presented in the State Court

20  proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of

21  the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v.

22  Taylor, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply

23  because that court concludes in its independent judgment that the relevant state-court decision

24  applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations

25  omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

26    While habeas corpus relief is an important instrument to assure that individuals are

27  constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392

28  (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a

1    criminal conviction is the primary method for a petitioner to challenge that conviction.  Brecht v.

2    Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's

3    factual determinations must be presumed correct, and the federal court must accept all factual

4    findings made by the state court unless the petitioner can rebut "the presumption of correctness

5    by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115

6    S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day,

7    110 F.3d 1380, 1388 (9th Cir. 1997).

8    C.      Ineffective Assistance of Trial Counsel

9            Petitioner raises several instances in which he contends that counsel was ineffective.

10   Specifically, Petitioner contends that trial counsel failed to investigate the facts of the case, failed

11   to interview prosecution witnesses, failed to use an effective investigator, failed to prepare him to

12   testify and was negligent in calling him to testify, failed to adequately cross-examine Deputy

13   Watson, was negligent in calling Annette Meras as a witness, failed to object to an unsupported

14   instruction, failed to object to prosecutorial misconduct, and failed to give an effective closing

15   argument.

16           The law governing ineffective assistance of counsel claims is clearly established for the

17   purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe,

18   151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective

19   assistance of counsel, the court must consider two factors.  Strickland v. Washington, 466 U.S.

20   668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First,

21   the petitioner must show that counsel's performance was deficient, requiring a showing that

22   counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by

23   the Sixth Amendment. Strickland, 466 U.S. at 687.  The petitioner must show that counsel's

24   representation fell below an objective standard of reasonableness, and must identify counsel's

25   alleged acts or omissions that were not the result of reasonable professional judgment

26   considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348

27   (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges

28   a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance. <u>Strickland</u>, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); <u>Sanders v. Ratelle</u>, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. <u>Strickland</u>, 466 U.S. at 688. The court must also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. <u>Id.</u>; <u>Quintero-Barraza</u>, 78 F.3d at 1345; <u>United States v. Palomba</u>, 31 F.3d 1356, 1461 (9th Cir. 1994). More precisely, petitioner must show that (1) his attorney's performance was unreasonable under prevailing professional norms, and, unless prejudice is presumed, that (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different.

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. <u>Strickland</u>, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984). Since it is necessary to prove prejudice, any deficiency that does not result in prejudice must necessarily fail.

Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). <u>Weighall v. Middle</u>, 215 F.3d 1058, 1062 (2000). With this standard in mind, the Court turns to each of Petitioner's claims.

1.    <u>Failure To Investigate The Facts Of The Case</u>

Petitioner claims counsel failed to investigate or pursue the possibility that an accomplice or actual perpetrator was involved in the crime, despite counsel's belief that others were involved. Petitioner's claim is unfounded and without merit.

At trial, Petitioner testified that he grabbed two boxes from the garbage and took the items to the park to watch a soccer game. (RT 77.) Petitioner stated that a man named "Brandy" told him where the items were in the garbage. (RT 75.) He claimed that he did not know what was actually inside the boxes that he took. (RT 77-78.)

Petitioner's claim is nothing more than a conclusory allegation. Petitioner does not allege facts to demonstrate that counsel was deficient and that he was prejudiced as a result. Specifically, beyond his mere allegation, Petitioner does not present evidence as to what facts his

trial counsel failed to investigate or discovery, nor has he demonstrated any basis upon which he was prejudiced.  As such, Petitioner's claims is simply unfounded, and insufficient to support a basis for relief under § 2254.  See Ceja v. Stewart, 97 F.3d 1246, 1255 (9th Cir. 1996) (defendant "fail[ed] to explain what compelling evidence additional interviews would have unearthed or to explain how an investigation of aggravation evidence would have negated the evidence of the multiple gunshot wounds."); Hendricks v. Calderon, 70 F.3d 1032, 1042 (9th Cir. 1995) ("Absent an account of what beneficial investigation into any of these issues would have turned up, [defendant] cannot meet the prejudice prong of the Strickland test.").

The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

　　　　2.　　Failure To Interview Prosecution Witnesses

Petitioner contends that trial counsel failed to interview prosecution witnesses to determine the relevancy of a photograph that depicted the side of the Ballard's house and a green trash can.  Petitioner reasons that the prosecution was able to elicit testimony from him on cross-examination that he retrieved the items from the green can when, in fact, it was the black trash can.[3]  The prosecution presented rebuttal testimony with established that the green trash can was never used.  Petitioner contends that trial counsel should have interviewed the prosecution witnesses, to prevent his inaccurate testimony.  Petitioner's claim is senseless.

Petitioner's claim appears to be that had he known the Ballard's did not use the green garbage can, he would not have testified that he retrieved the items from that can.  At trial, Petitioner was under oath to tell the truth, and he surely cannot claim that he wished to base the accuracy of his testimony on another witness' testimony.  If Petitioner was unsure about the color of the trash can, he should have testified that he did not recall which trash can it was.

Petitioner has not, and cannot, demonstrate that counsel was deficient or prejudicial.  Counsel cannot be faulted for failing to seek information that would assist Petitioner in being

---

[3] As Respondent points out, in the petition, Petitioner states that he testified he retrieved the items from a gray garbage can.  However, the portion of the record to which he cites, identified the green trash can.  Accordingly, as does Respondent, the Court assumes that Petitioner meant to refer to the green, not gray, garbage can.

8

more accurate in his testimony of which he has first hand knowledge.  Counsel reasonably should

be able to rely on the fact that Petitioner knew the color of the trash can from which he retrieved

the stolen items, and if Petitioner was unsure he would have testified to such.

3. Failure To Use An Effective Investigator

Petitioner contends that counsel failed to investigate and locate two witnesses who could

have bolstered his credibility and established his innocence.  Petitioner claims that he told

defense counsel's investigator that "Brandy" could be located at a certain gas station or spot near

the freeway or river where the homeless often camped.  Petitioner also claims that a woman, who

was located two houses south of the incident, observed him digging through the garbage can.

Petitioner's claim is without merit.

Petitioner offers no evidence as to the identity of "Brandy" or the "woman" he contends

observed him digging through the garbage.  Nor does Petitioner identify that their testimony

would have been sufficient to create a reasonable doubt as to his guilt, or that they were in fact

willing to testify on his behalf.  Tinsley v. Borg, 895 F.2d 520, 532 (9th Cir. 1990); see also

United States v. Berry, 814 F.3d 1406, 1409 (9th Cir. 1989) (holding that where defendant did not

indicate what witness would have testified to and how such testimony would have changed the

outcome of the trial, there can be no ineffective assistance of counsel).  In addition, the absence

of affidavits from these witnesses strongly negates Petitioner's claim.  Howard v. O'Sullivan,

185 F.3d 721, 724 (7th Cir. 1999) ("failure to submit supporting affidavits from [the] potential

witnesses would severely hobble [the petitioner's] case.")  The state courts' determination of this

issue was not contrary to, or an unreasonable application of, clearly established Supreme Court

precedent.

4. Failure To Prepare Petitioner To Testify

Petitioner contends that counsel failed to review the circumstances of his case and prepare

him to testify.  Petitioner claims that he should not have been allowed to testify because he was

unable to "adequately or convincingly articulate himself."

Petitioner's claim fails on the merits.  Petitioner fails to allege how counsel failed to

prepare him to testify and how the failure affected the outcome of his trial.  Petitioner does not

1 contend that he did not testify freely on his own will or that counsel forced him to testify.

2 Petitioner merely contends that counsel failed to advise him of the inconsistencies between his

3 testimony and that of other witnesses.  If this is so, it appears that Petitioner claims he would

4 have changed his trial testimony on the basis of the other witnesses testimony.  Counsel surely

5 could not have been deficient for failing to assist Petitioner in giving inaccurate (and potential

6 perjured) testimony.

7      Moreover, the undisputed evidence established that Petitioner was in possession of the

8 stolen items and the victims identified Petitioner as the individual they caught with the stolen

9 property.  Through his testimony, Petitioner attempted to offer an explanation as to why he was

10 at the Ballard residence and in possession of the stolen property.   The fact that the jury

11 discredited Petitioner's testimony, is insufficient to establish that counsel was ineffective.  Given

12 the strong evidence of Petitioner's guilt, he simply cannot establish that counsel's was deficient

13 for allowing him to testify, or that he was prejudiced thereby.

14      5.    <u>Failure To Adequately Cross-Examine Deputy Watson</u>

15      Petitioner contends that counsel failed to cross-examine Deputy Watson regarding his

16 failure to investigate the information Petitioner gave him about "Brandy."  As a consequence,

17 Petitioner contends that potential exculpatory evidence remained undiscovered.

18      At trial, Deputy Watson testified that Petitioner stated that Brandy told him where he

19 could locate the tools.  (RT 117.)  Watson asked Petitioner to provide the location of Brandy, and

20 Petitioner stated that he did not know Brandy's last name or an address for him.  (RT 117-118.)

21      Petitioner has simply failed to provide any basis upon which counsel could have cross-

22 examined Watson about his failure to investigate.  Because Petitioner was unable to provide a

23 last name, much less an address for Brandy, there was simply no way for Deputy Watson to

24 locate Brandy.  Accordingly, Petitioner's claim that counsel was ineffective for not cross-

25 examining Watson, is simply unfounded and without merit.

26      6.    <u>Negligent In Calling Annette Meras As A Witness</u>

27      Petitioner contends that the testimony by Annette Meras discredited his credibility

28 because she provided testimony that the tools found in Petitioner's possession were the same

brand name items they had at home.  Petitioner testified that he did not know what the items in the box were.

Petitioner's claim is without merit.  Petitioner overlooks the fact that Annette Meras testified that she and Petitioner would salvage items from trash cans.  (RT 100-101.)  This testimony was vital to Petitioner's defense that he took the items from a trash can.  Further, Petitioner mis-characters the testimony by Meras.  She testified that she would not be able to recognize the tools if they were in a closed case because they did not have a case for their tools.  (RT 115.)  This did not conflict with Petitioner's testimony that he grabbed two boxes from the garbage and did not know the contents.  (RT 77.)  Petitioner has simply failed to demonstrate that counsel was deficient or that he was prejudiced.  More specifically, as Respondent submits, if anything, if believed, Meras' testimony provided some credibility to Petitioner's implausible explanation.  The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

7.    Failure To Object To An Unsupported Instruction

Petitioner contends that counsel was ineffective for allowing the jury to be instructed with CALJIC 2.52 and 2.15.  For the reasons discussed *infra*, Petitioner's claim fails as both instructions were properly given.   Because the instructions were proper, Petitioner has not, and cannot, demonstrate that counsel was deficient or that he was prejudiced.  Accordingly, the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

8.    Failure To Object To Prosecutorial Misconduct

Petitioner contends that counsel failed to object to the prosecutor's improper argument regarding the screwdriver during closing presentation.

At trial, Joshua Ballard testified that during the struggle with Petitioner in the park, Petitioner attempted to use a screwdriver, one of the stolen items, to try to poke it into Kirk. (RT 43-44.)  Ross Ballard believed that Petitioner had a screwdriver in his hand, but he did not remember seeing it during the struggle.  (RT 65.)

During closing argument, the prosecutor argued that the two brothers were credible

because they did not change their testimonies to match each other.  (RT 154.)  She also argued

that the inconsistencies in their recollections of the incident were minor.  (RT 154.)  The

prosecutor reasoned that Petitioner was not charged with assault and therefore any

inconsistencies as to whether he attempted to use a screwdriver during the struggle was simply

irrelevant to the burglary charge.  (RT 154.)

The prosecutor's argument was entirely proper, and there is simply no basis upon which

counsel could have objected.  Accordingly, Petitioner's claim is without merit.

Petitioner further claims that counsel failed to object to the prosecutor's improper use of

the photograph of Kirk Tobler's injury.  He claims he acted in self-defense and the prosecutor

mis-stated the evidence.

At trial, the victims testified that they wrestled Petitioner to the ground and held him

down until the police came.  (RT 58, 65.)  The evidence also established that during the struggle,

Petitioner bit Kirk Tobler in the arm.  (RT 159.)  During closing argument, the prosecutor

presented the jury with a photograph depicting the injury to Kirk's arm.  (RT 159.)  The

prosecutor argued that Petitioner bit hard enough to break the skin because he wanted to get

away.  (RT 159.)

Petitioner's claim that the prosecutor engaged in misconduct is without merit.  By

presenting the photograph to the jury, the prosecutor simply showed the jury the injury which the

two witnesses had previously testified to.  In fact, Petitioner did not dispute that he bit Kirk, he

only disputed the reason for doing so.  Petitioner claimed that he was acting in self-defense when

he bit Kirk.  (RT 84-85, 170-171.)  Both the prosecutor and Petitioner were equally allowed to

argue their theories of the case, of which both took advantage.  Accordingly, the prosecutor did

not engage in misconduct, and defense counsel was not ineffective for failing to object.  The state

courts' determination of this issue was not contrary to, or an unreasonable application of, clearly

established Supreme Court precedent.

9.    Failure To Give Effective Closing Argument

Petitioner contends that counsel was ineffective in the presentation of his closing

argument.  Petitioner's claim is meritless.

Petitioner contends that counsel failed to rebut the prosecutor's contention that "[t]he evidence seems to suggest that [Petitioner] made more than one trip into the garage[.]" (RT 156.) Petitioner claims that counsel should have rebutted this allegation with the fact that it was "Brandy" who actually committed the burglary. Contrary to Petitioner's contention, defense counsel argued that there was no evidence that Petitioner was actually in the garage. (RT 167.) In addition, counsel argued that "Brandy" told Petitioner about the abandoned items in the garbage. (RT 167-168, 171.) Petitioner provides no factual support for his contention that counsel should have argued "Brandy" actually committed the burglary. To present such evidence had the potential to damage Petitioner's credibility given that his defense was that "Brandy" told about the abandoned items, and no evidence supported the fact that Brandy actually committed the burglary. In fact, Petitioner was the one found in possession of the stolen items. As a result, counsel cannot be faulted for failing to argue a theory that was not supported by the evidence and contradicted the evidence before the jury. Accordingly, Petitioner's claim is without merit.

Petitioner further contends that counsel invited the jury to disbelieve his testimony. Petitioner mis-characterizes counsel's argument. Counsel argued, reasonably so, that even if the jury discounted Petitioner's testimony, "what did the People have?" (RT 167.) Counsel presented the argument that the prosecution had simply failed to meet its burden of proof beyond a reasonable doubt. By presenting such argument, counsel provided an avenue for the jury to find Petitioner "not guilty" even if they did not believe his testimony. Petitioner's claim is simply without merit, as counsel fulfilled his obligation of arguing that the prosecution had failed to meet its burden of proof.

10.   Abuse Of Discretion In Denying Petitioner's Marsden Motion

Petitioner contends that the trial court abused its discretion by denying his Marsden motion. Petitioner contends that he and counsel had communication problems. Petitioner fails to provide any factual support for his contention of the communication problems, nor does Petitioner establish that he was prejudiced as a result of such communication problems. Accordingly, Petitioner's claim fails under Strickland, and the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court

1  precedent.

2  D.     Instructional Error

3      Petitioner contends that the trial court erred in instructing the jury with both CALJIC No.

4  2.52 and 2.15.  As a result, Petitioner contends that his rights to due process and trial by an

5  impartial jury.

6      A challenge to a jury instruction solely as an error under state law does not state a claim

7  cognizable in a federal habeas corpus action.  See, Estelle v. McGuire, 502 U.S. 62, 71-72

8  (1991).  To obtain federal collateral relief for errors in the jury charge, a petitioner must show

9  that the ailing instruction by itself so infected the entire trial that the resulting conviction violates

10  due process.  See, id. at 72.  Additionally, the instruction may not be judged in artificial isolation,

11  but must be considered in the context of the instructions as a whole and the trial record.  Id.  The

12  court must evaluate jury instructions in the context of the overall charge to the jury as a

13  component of the entire trial process.  See United States v. Frady, 456 U.S. 152, 169 (1982)

14  (citing Henderson v, Kibbe,  431 U.S. 145, 154 (1977)).  Furthermore, even if it is determined

15  that the instruction violated the petitioner's right to due process, a petitioner can only obtain

16  relief if the unconstitutional instruction had a substantial influence on the conviction and thereby

17  resulted in actual prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710

18  (1993) (whether the error had a substantial and injurious effect or influence in determining the

19  jury's verdict.).  See Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996).  The burden of

20  demonstrating that an erroneous instruction was so prejudicial that it will support a collateral

21  attack on the constitutional validity of a state court's judgment is even greater than the showing

22  required to establish plain error on direct appeal."  Id.

23      1.     CALJIC No. 2.52

24      Petitioner contends the trial court erred in giving CALJIC 2.52 because the word "flight"

25  was not defined for the jury.  Petitioner argues that to the average person, "flight" means "any

26  attempt to get away."  More specifically, Petitioner argues that the dictionary, the word "flight"

27  means "an act or an instance of fleeing," and the word "flee" means "to run away (from)."

28  Petitioner contends the evidence did not establish that he ran from the victims in the park.

14

1    Petitioner presented this claim via state habeas corpus petitions, which were summarily

2    denied on the merits.  (Lodged Doc. Nos. 14, 15, 18-21.)  The court looks to the last reasoned

3    state court decision as to the basis for the state court judgment.  Avila v. Galaza, 297 F.3d 911,

4    918 (9th Cir. 2002) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991)).  Where, as here,

5    the state court reaches a decision on the merits but provides no reasoning to support its

6    conclusion, a federal habeas court independently reviews the record to determine whether habeas

7    corpus relief is available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir.

8    2000).

9    At trial, the court instructed the jury with CALJIC 2.52 as follows:

10            The flight of a person immediately after the commission of a
              crime, or after he is accused of a crime, is not sufficient in itself to
11            establish his guilt, but is a fact which, if proved, may be considered
              by you in the light of all other proved facts in deciding whether a
12            defendant is guilty or not guilty.  The weight to which this
              circumstance is entitled is a matter for you to decide.
13

14   (CT 77; RT 150.)

15   Petitioner is in essence arguing that the word "flight" is ambiguous and had the potential

16   to confuse the jury.  As Respondent submits, there are likely several definitions of the word, and

17   it certainly implies more than just an attempt to get away.  Nonetheless, even if the word is

18   considered to be ambiguous, Petitioner's claim is without merit.

19   The evidence produced at trial established that Petitioner tried to run from the victims at

20   the park.  Joshua Ballard testified that when Petitioner saw him get out of the car, Petitioner ran,

21   and Joshua, Ross, and Kirk, chased him.  (RT 37-38, 49-51, 54.)  In addition, Ross Ballard

22   testified that Petitioner "started to sort of run but didn't," and they chased after Petitioner.  (RT

23   58.)  Ross testified that Petitioner was walking backwards for a while and also testified that they

24   ran after Petitioner when Petitioner started running.  (RT 63.)

25   Based on the evidence presented to the jury, it simply cannot be said that there was a

26   reasonable likelihood that the jury applied the flight instruction in an unconstitutional manner.

27   The evidence amply supported the finding that Petitioner ran away from the victims in the park.

28   Moreover, even Petitioner testified that, at the park, when he saw people coming towards him, he

1   tried to leave.  (RT 77, 86.)

2        Moreover, CALJIC 2.52, did not prevent the jury from finding that Petitioner did not

3   engaged in "flight" after the burglary.  CALJIC 2.52 specifically states that flight may be

4   considered, *if proved*.  Therefore, the jury was free to conclude that there was not flight or,

5   alternatively, if it found there was flight, to accord little or no weight to this fact.  *See* CALJIC

6   No. 2.52.

7        Furthermore, the Ninth Circuit has repeatedly upheld the constitutionality of CALJIC No.

8   2.52.  See McMillian v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994) (claim regarding instruction on

9   flight did not raise genuine federal constitutional issue); Houston v. Roe, 177 F.3d 901, 910 (9th

10  Cir. 1999) (the flight instruction was not prohibited by clearly established United States Supreme

11  Court precedent under AEDPA); Karis v. Calderon, 283 F.3d 1117, 1131-1132 (9th Cir. 2002)

12  (the court's failure to modify the flight instruction to recite petitioner's excuse was not error

13  because the instruction did not prevent the jury from considering the excuse).

14        2.        CALJIC No. 2.15

15        Petitioner contends that by instructing the jury with CALJIC No. 2.15, the trial court

16  lessened the prosecution's burden to establish guilt beyond a reasonable doubt.  Petitioner argues

17  that the jury could have found him guilty of burglary if there was only "slight" corroborating

18  evidence.  Petitioner also contends that the instruction allowed the jury to convict him even

19  though he had satisfactorily explained his possession of the recently stolen property.

20         Petitioner presented this claim on direct appeal to the California Court of Appeal and

21  California Supreme Court on direct review.  (Lodged Doc. Nos. 1, 6.)  Because the California

22  Supreme Court's opinion is summary in nature, however, this Court "looks through" that

23  decision and presumes it adopted the reasoning of the California Court of Appeal, the last state

24  court to have issued a reasoned opinion.  See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3,

25  111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas review, "look through"

26  presumption that higher court agrees with lower court's reasoning where former affirms latter

27  without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding

28  federal courts look to last reasoned state court opinion in determining whether state court's

1  rejection of petitioner's claims was contrary to or an unreasonable application of federal law

2  under § 2254(d)(1)).

3      At trial, the court instructed the jury with CALJIC No. 2.15, which states, in relevant part,

4  as follows:

> If you find that a defendant was in conscious possession of recently
> stolen property, the fact of that possession is not by itself sufficient
> to permit an inference that the defendant is guilty of the crime of
> burglary or receiving stolen property.  Before guilt may be inferred,
> there must be corroborating evidence tending to prove defendant's
> guilt.  However, this corroborating evidence need only be slight,
> and need not by itself be sufficient to warrant an inference of guilt.

(CT 76; RT 149-150.)

    The California Court of Appeal rejected the claim relying on prior court precedent in

People v. Hernandez, 34 Cal.App.4th 73, 81 (1995).  (Lodged Doc. No. 1, at 4.)  In Hernandez,

the Court of Appeal held that CALJIC 2.15 creates only a permissive inference, that the jury was

free to either credit or reject based on its review of the evidence, and the instruction therefore

does not relieve the State of its burden to establish guilt beyond a reasonable doubt.  Id.  (Lodged

Doc. No. 1, at 4.)  The Hernandez court held that because the instruction creates only an

inference that may or may not be drawn from the evidence, it did not serve to modify or lessen

the ultimate burden of proof.  Id.  (Lodged Doc. No. 1, at 4.)

    The Court of Appeal also rejected Petitioner's claim that the instruction allowed a

conviction despite the fact that he had provided an explanation for possessing the stolen items.

(Lodged Doc. No. 1, at 4.)  First, the Court clarified that the relevant inquiry is not whether the

jury could have believed Petitioner's story, but whether sufficient corroborating evidence of the

burglary existed.  (Id.)  The Court concluded:

> [G]iven the suspicious circumstances surrounding [Petitioner's] possession of
> recently stolen items, i.e., his proximity to the garage, his attempted flight, his
> inconsistent statements as to whether he knew the items he possessed were tools,
> and his implausible explanation for how the tools came into his possession, the
> jury had ample corroborating evidence to find beyond a reasonable doubt that
> [Petitioner] committed burglary.

(Lodged Doc. No. 1, at 4.)

    Petitioner has failed to demonstrate entitlement to relief under § 2254.  As the state

17

appellate court properly determined that CALJIC No. 2.15 creates only a permissive inference that does not improperly shift the burden of proof,[4] the instruction is constitutional as long as it can be said with substantial assurance that the inferred fact is more likely than not to flow from the proved fact on which it is made to depend.  Hanna v. Riveland, 87 F.3d 1034, 1037 (9th Cir. 1996).

Here, there was corroborating evidence to establish Petitioner's guilt beyond a reasonable doubt.  Petitioner himself testified that he rode a bicycle to the Ballard residence.  (RT 76-77, 82.)  He testified that he grabbed two boxes from the garbage, and then took the items to the park to watch a soccer game.  (RT 77.)  Petitioner stated that while at the park when he saw people coming toward him, he attempted to leave.  (RT 77, 86.)  Petitioner's explanation for possessing the stolen items was simply implausible.  Petitioner claimed that a man named "Brandy," (with an unknown last name and address) told him where he could locate the items in the garbage. However, Petitioner claimed that he did not know what was inside the box, and did not know why he was attacked by the men in the park.  (RT 77-78.)

Given the evidence established at trial, the jury could, and did, reasonably conclude that Petitioner was guilty of burglary, and there is simply no reasonable likelihood that the jury applied CALJIC No. 2.15 in an unconstitutional manner.

E.    Prosecutorial Misconduct

Petitioner contends that the prosecutor committed misconduct by implying that he had been convicted of the crime charged on four separate prior occasions.  Petitioner also claims that the prosecutor mis-stated the evidence in her closing argument.

Petitioner presented this claim to the state courts via state petition for writ of habeas corpus, which were denied summarily.  (Lodged Doc. Nos. 19, 21.)  The court looks to the last reasoned state court decision as to the basis for the state court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991)).  Where,

---

[4] This finding is supported by the plain language of the instruction which states that "conscious possession of . . . stolen property is not itself sufficient to permit an inference that the defendant is guilty of the crime of robbery or burglary."  CALJIC No. 2.15.

18

as here, the state court reaches a decision on the merits but provides no reasoning to support its

conclusion, a federal habeas court independently reviews the record to determine whether habeas

corpus relief is available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir.

2000).

A habeas petition will be granted for prosecutorial misconduct only when the misconduct

"so infected the trial with unfairness as to make the resulting conviction a denial of due process."

Darden v. Wainwright, 477 U.S. 168, 171, 106 S.Ct. 2464 (1986) (quoting Donnelly v.

DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871 (1974)); see, Bonin v. Calderon, 59 F.3d

815, 843 (9th Cir. 1995).  To constitute a due process violation, the prosecutorial misconduct

must be "of sufficient significance to result in the denial of the defendant's right to a fair trial."

Greer v. Miller, 485 U.S. 756, 765, 107 S.Ct. 3102, 3109 (1987) (quoting United States v.

Bagley, 473 U.S. 667, 105 S.Ct. 3375 (1985)).  Under this standard, a petitioner must show that

there is a reasonable probability that the error complained of affected the outcome of the trial -

i.e., that absent the alleged impropriety, the verdict probably would have been different.

1.      Prosecutor's Questioning As To Prior Felonies Was Not Misconduct

Petitioner contends that the prosecutor committed misconduct by asking questions

regarding his prior felonies to insinuate that he had committed the charged act on prior occasions.

At trial, the prosecutor asked Petitioner, "is it true that in 1990 you were convicted of

burglary in this county?" (RT 87.)   Defense counsel objected, moved to strike, and requested a

sidebar.  (Id.)  After the sidebar, the prosecutor clarified and stated that she had misspoken and

asked Petitioner if he was convicted of robbery in 1990.  (Id.)  The prosecutor then proceeded to

question Petitioner regarding the other prior felony convictions, but the identity of the actual

offenses were not disclosed.  (RT 87-88.)

There is no showing that the prosecutor engaged in misconduct in questioning Petitioner

regarding his prior felony convictions.  Although the prosecutor initially misspoke regarding his

1990 conviction, by misstating that it was for burglary instead of robbery.  The prosecutor

subsequently clarified the misstatement.  Defense counsel appropriately objected to the

questioning regarding the 1990 conviction, however, there is no record of any objection as to the

19

1   other prior felony convictions.  (RT 87-88.)  Accordingly, Petitioner has failed to sustain his

2   burden of demonstrating that the prosecutor engaged in misconduct, let alone that there is a

3   reasonable probability that the error complained of affected the outcome of the trial.  As such,

4   Petitioner's claim fails on the merits, and the state courts' determination of this issue was not

5   contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

6          2.    <u>Closing Argument</u>

7         Petitioner claims the prosecutor misstated the evidence by showing the jury a photograph

8   of Kirk Tobler's injury during her closing argument.  Petitioner contends that he acted in self-

9   defense and prosecutor engaged in misconduct by arguing anything different.  Petitioner contends

10  that he was not able to confront and cross-examine Kirk Tobler because he did not testify at trial.

11        In a related claim, discussed *supra* under section C, subd. (8), Petitioner claimed that

12  defense counsel was ineffective for failing to object to the prosecutor's presentation of the

13  photograph depicting the injury to Kirk Tobler's arm during closing argument.   For the reasons

14  discussed herein, Petitioner has failed to establish that the prosecutor committed misconduct by

15  presenting the photograph.  To recap, the prosecutor simply showed the jury an exhibit of which

16  two witnesses had already identified as the injury Petitioner inflicted on Kirk Tobler.  In fact,

17  Petitioner did not dispute that he bit Mr. Tobler, but only disputed the reason for doing so.  (RT

18  84-85, 170-171.)  Both the prosecutor and Petitioner were allowed to present and argue their

19  theories of the case.

20        Petitioner's claim that he was denied the opportunity to cross-examine Kirk Tobler is

21  unfounded, as the prosecutor did not present any testimony or statements made by Tobler, and

22  there can be no resulting cross-examination violation.  The state courts' determination of this

23  issue was not contrary to, or an unreasonable application of, clearly established Supreme Court

24  precedent.

25  F.    <u>Insufficient Evidence</u>

26        Petitioner contends that there was insufficient evidence to support his conviction of

27  burglary.

28        The Stanislaus County Superior Court rejected this claim on the ground that Petitioner's

1   petition failed to reveal sufficient facts to establish a prima facie case for relief.  (Lodged Doc.

2   No. 15.)

3          The law on insufficiency of the evidence claim is clearly established.  The United States

4   Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a

5   federal court must determine whether, viewing the evidence and the inferences to be drawn from

6   it in the light most favorable to the prosecution, any rational trier of fact could find the essential

7   elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).

8   Sufficiency claims are judged by the elements defined by state law.  Id. at 324, n. 16.

9          Contrary to Petitioner's contention, sufficient evidence supports his conviction.  The

10  victims testified that as they drove home from the park, they observed a Hispanic male riding a

11  pink bicycle with a drill in his hand that looked familiar.  (RT 36, 56-57.)  After looking in their

12  garage, they discovered that their drill was missing.  (RT 36-37, 57.)  Both Joshua and Ross

13  Ballard testified that they kept their tools in the garage, and not in the garbage can.  (RT 35-37.)

14  The victims observed Petitioner in the park with their drill and a case of sockets.  (RT 37, 57-58.)

15  When Petitioner saw them get out of their car, Petitioner ran, and they chased and eventually

16  tackled him.  (RT 37-38, 49-51, 54, 58, 63.)

17         In addition, Petitioner testified that he rode a bicycle to the Ballard residence, obtained

18  the two boxes from the garbage can, and then went to the park to watch a soccer game.  (RT 76-

19  77, 82.)   While at the park, when Petitioner observed the people coming towards him, he tried to

20  leave, but was attacked and apprehend.  (RT 77, 86.)

21         Based on the above evidence, a rationale trier of fact could, and did, find beyond a

22  reasonable doubt that Petitioner committed the burglary.  The state courts' determination of this

23  issue was not contrary to, or an unreasonable application of, clearly established Supreme Court

24  precedent as established in Jackson v. Virginia, 443 U.S. 307, 319 (1979).

25                                    RECOMMENDATION

26         Based on the foregoing, it is HEREBY RECOMMENDED that:

27  1.        The instant petition for writ of habeas corpus be DENIED; and

28  2.        The Clerk of Court be directed to enter judgment in favor of Respondent.

                                             21

1   This Findings and Recommendation is submitted to the assigned United States District

2   Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of

3   the Local Rules of Practice for the United States District Court, Eastern District of California.

4   Within thirty (30) days after being served with a copy, any party may file written objections with

5   the court and serve a copy on all parties.  Such a document should be captioned "Objections to

6   Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served

7   and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the

8   objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §

9   636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time

10  may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th

11  Cir. 1991).

12      IT IS SO ORDERED.

13  **Dated:**   **December 10, 2007**          **/s/ Dennis L. Beck**
                                          UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28